ORDERED.

**Dated: June 29, 2021**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 8:20-bk-01953-MGW
                                                    Chapter 11
All Sorts of Services of America, Inc.,

    Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

> *Look . . . me and the McDonald's people got this little*
> *misunderstanding. See, they're McDonald's . . . I'm McDowell's.*
> *They got the Golden Arches, mine is the Golden Arcs. They got*
> *the Big Mac, I got the Big Mick. We both got two all-beef patties,*
> *special sauce, lettuce, cheese, pickles and onions, but their buns*
> *have sesame seeds. My buns have no seeds.*
>
>         — Cleo McDowell[1]
>          *Coming to America*

    To paraphrase Cleo McDowell, from the 1988 hit movie *Coming to America*,

this case involves a little misunderstanding between the Debtor and the Internal

---

[1] Coming to America (Paramount Pictures 1988); *see also* Coming to America, Quotes, https://www.imdb.com/title/tt0094898/quotes/?ref_=tt_trv_qu (last visited June 28, 2021).

Revenue Service. The IRS seeks to hold the Debtor, which is owned by Jon Cerrito, liable for roughly $1.5 million in back taxes owed by Chimney Cricket, Inc.—another company owned by Cerrito. The IRS claims the Debtor, which does business as "Chimney Cricket," is a "mere continuation" of Chimney Cricket, Inc., which does business as "Chimnee Cricket."

Channeling Cleo McDowell, the Debtor denies it is a mere continuation of Chimnee Cricket: *They're Chimnee Cricket; we're Chimney Cricket. They have a logo with a six-legged cricket wearing a sleeveless coat, vest, and top hat and holding a broom, brush, and bucket; our logo also has a six-legged cricket wearing a sleeveless coat, vest, and top hat and holding a broom, brush, and bucket—but our logo has the words "Chimney Cricket." We both provide chimney cleaning services. But we provide other construction-related services. They don't.*

Whether one entity is a "mere continuation"—and therefore liable for the debts—of another has never depended on trivial differences such as whether "Chimney Cricket" is spelled with an "ee" or "ey" or whether a logo with a tuxedo-clad cricket holding cleaning equipment contains text or not. Instead, the test is "whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other."[2]

---

[2] *Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 742 n.1 (Fla. 5th DCA 1988).

Here, there was a relay-style passing of the baton from Chimnee Cricket to Chimney Cricket. From 2006 to 2017, Chimnee Cricket provided chimney cleaning services, primarily to customers obtained through leads generated by Home Advisor and Angie's List, as well as the website chimneycricket.com. After doing more than $2 million in gross revenue in 2017, Chimnee Cricket basically stopped doing business in 2018—right around the time the IRS was assessing more than $750,000 in back taxes against the company. In 2018, as Chimnee Cricket was winding down, Cerrito started doing business as "Chimney Cricket." Using key Chimnee Cricket employees and the same sources for leads (Home Advisor and Angie's List) and website (chimneycricket.com), Chimney Cricket did nearly $3 million in gross revenue in 2018. In other words, Chimney Cricket took the baton from Chimnee Cricket and kept running.

Because there was a relay-style passing of the baton from Chimnee Cricket to Chimney Cricket, Chimney Cricket (i.e., the Debtor) is a "mere continuation" of Chimnee Cricket. Chimney Cricket is therefore liable for the back taxes owed by Chimnee Cricket.

## I. Findings of Fact

Jon Cerrito has been in the chimney business for more than 30 years. After graduating from high school in 1990, Cerrito started doing odd jobs, before eventually going to work for a man in Michigan who cleaned chimneys.[3] In 2006,

---

[3] Trial Tr., Doc. No. 190, p. 42, ll. 2 – 7.

3

Cerrito started his own company, Chimney Cricket, Inc., which mostly cleaned chimneys, though it did some other minor work on chimneys.[4]

By the time he had formed Chimney Cricket, Inc., Cerrito had registered the fictitious name "Chimnee Cricket."[5] And, through a company he owned called JSCJ Company, Inc., Cerrito had also trademarked the name "Chimnee Cricket"[6] and a logo, which depicted "an animated drawing of a cricket with six legs standing up and holding a broom, a brush, and a bucket; wearing boots, a sleeveless coat, a vest, and a tophat."[7]

From 2006 to 2018, Chimney Cricket, Inc. did business as "Chimnee Cricket" using the Chimnee Cricket logo and trade name. It operated out of an office located on Ashton Road in Sarasota, Florida.[8] Because insuring employees who do chimney work is expensive, as is the cost of worker's compensation for those employees, most of Chimnee Cricket's work in the field was done through independent contractors.[9]

---

[4] *Id.* at p. 42, ll. 8 – 13; p. 43, ll. 13 – 18; p. 95, ll. 12 – 15.

[5] Debtor Ex. 42, Doc. No. 175-42.

[6] Debtor Ex. 34, Doc. No. 175-34.

[7] Debtor Ex. 33, Doc. No. 175-33.

[8] Trial Tr., Doc. No. 190, p. 46, ll. 15 – 17; p. 89, ll. 13 – 16.

[9] *Id.* at p. 59, ll. 13 – 23; p. 60, l. 6 – p. 61, l. 6. The testimony about Chimnee Cricket's use of employees and independent contractors was somewhat unclear on this point. In all, Chimnee Cricket had 67 employees and 25 independent contractors. IRS Ex. 18, Doc. No. 163-18, at 5. But Cerrito couldn't say for sure when any one of those employees worked for Chimnee Cricket. Trial Tr., Doc. 90, p. 104, ll. 7 – 13. So Chimnee Cricket had fewer employees than independent contractors. But the Court infers that 67 is the total number of employees who worked for the company at any point in time. In other words, Chimnee Cricket did not employ all 67 employees at once. Based on Cerrito's testimony, the Court infers that, while Chimnee Cricket had fewer

The company, however, had several key employees, including David Hildebrand and Anthony Zanni.

Chimnee Cricket mostly got its customers through leads generated by Home Advisor and Angie's List.[10] According to its Home Advisor profile, Chimnee Cricket was a Home Advisor "Best of" award winner for 2016, was "Top Rated" by Home Advisor, and had more than 100 reviews.[11] Chimnee Cricket also generated leads through the website www.chimneycricket.com.

The lead generation—through Home Advisor, Angie's list, and the chimneycricket.com website—appeared to be working. By 2017, Chimnee Cricket was doing a little more than $2 million in gross revenue.[12]

Even so, the company was having problems. For years, dating back to 2012, Chimnee Cricket had been under audit by the Internal Revenue Service.[13] The tax problems were apparently caused by poor recordkeeping by an incompetent accountant who had talked the company into doing its payroll in-house to save

---

independent contractors than employees overall, the company relied more on independent contractors to do the field work. In any event, this point is not central to the Court's ruling.

[10] *Id.* at p. 50, ll. 2 – 13.

[11] IRS Ex. 19, Doc. No. 163-19.

[12] IRS Ex. 7, Doc. No. 163-7, at 46.

[13] Trial Tr., Doc. No. 190, p. 47, l. 12 – p. 50, l. 1.

money.[14] Whatever the cause, the IRS began assessing back taxes against Chimnee Cricket in 2016.[15]

At first, it wasn't much: in 2016, the IRS assessed $966.49 in back taxes for the 2012 tax year; in 2017, the IRS assessed roughly another $10,800 in back taxes for the 2013 and 2014 tax years.[16] But the big hit was coming: in 2018, the IRS assessed back taxes for 2013, 2014, and 2015 in the amount of $752,423.[17]

In 2018, Chimnee Cricket began winding down its operations. That year, Chimnee Cricket saw its gross revenue drop from a little more than $2 million to less than $165,000.[18] By the end of 2019, Chimnee Cricket was out of business and in chapter 7 bankruptcy.[19]

As Chimnee Cricket was winding down its operations in 2018, Cerrito started a new company: All Sorts of Services, Inc. Cerrito incorporated All Sorts of Services, Inc. on December 15, 2017, with the incorporation effective as of January 1, 2018—just months before the IRS assessed more than $750,000 in back taxes (not including penalties or interest) against Chimnee Cricket.[20]

---

[14] *Id.* at p. 33, ll. 9 – 17; p. 48, l. 9 – p. 49, l. 11.

[15] Debtor Ex. 20, Doc. No. 175-20.

[16] *Id.*

[17] *Id.*

[18] IRS Ex. 7, Doc. No. 163-7, at 46.

[19] *Id.* at 1 – 6.

[20] Debtor Ex. 37, Doc. No. 175-37; Debtor Ex. 20, Doc. No. 175-20.

According to Cerrito, All Sorts of Services, Inc. does, as the name suggests, all sorts of services: historical preservation, remodels, bathroom trim, drywall, and anything else that falls under construction restoration.[21] The services also include chimney cleaning.[22] Although Cerrito claims chimney cleaning is a small percentage of the company's work, the company does business as "Chimney Cricket" (spelled with an "ey" at the end rather than "ee").[23]

Like Chimnee Cricket, Chimney Cricket uses a logo that has a cricket with six legs standing up and holding a broom, a brush, and a bucket; and wearing boots, a sleeveless coat, a vest, and a top hat.[24] The only difference is that Chimney Cricket's logo has the words "Chimney Cricket" (Chimnee Cricket's logo had no text).[25] Also like Chimnee Cricket, Chimney Cricket, at least for a year or so, operated out of the same Ashton Road location.[26] And it uses some of the same key employees: Cerrito, of course, is Chimney Cricket's operational manager;[27] and David Hildebrand and

---

[21] Trial Tr., Doc. No. 190, p. 45, ll. 14 – 19.

[22] *Id.* at p. 45, ll. 20 – 21.

[23] *Id.* at p. 45, l. 20 – p. 46, l. 1.

[24] Debtor Exs. 32 & 33, Doc. Nos. 175-32 & 175-33.

[25] *Id.*

[26] Trial Tr., Doc. No. 190, p. 46, ll. 15 – 17; p. 90, l. 19 – p. 91, l. 8; IRS Exs. 2, 8 & 10, Doc. Nos. 163-2, 163-8 & 163-10. Cerrito claims Chimney Cricket never operated out of the old Chimnee Cricket location. Trial Tr., Doc. No. 190, p. 47, l. 8 – 11. Instead, he claims Chimney Cricket operated only out of a location on Porter Lake Drive. *Id.* at p. 46, l. 21 – p. 47, l. 1. But that can't be: Chimney Cricket did not buy and move to the Porter Lake Drive location until sometime in 2019— more than a year after it began doing business. *Id.* at p. 91, ll. 9 – 14; p. 94, l. 18 – p. 95, l. 1.

[27] *Id.* at p. 106, ll. 15 – 21.

Anthony Zanni (former Chimnee Cricket employees) are the only Chimney Cricket employees other than Cerrito who supervise other employees and who do estimating.[28]

More important, Chimney Cricket, like Chimnee Cricket, relies on the same sources for potential customers.[29] For instance, Chimney Cricket, like Chimnee Cricket, gets potential leads from Home Advisor and Angie's list.[30] It also gets leads through chimneycricket.com, the same website Chimnee Cricket used to generate leads.[31]

The chimneycricket.com website advertises that "Chimney Cricket Proudly Provides Masonry, Fireplace and Chimney Services to Michigan, Ohio and Florida."[32] On the "About us" page, the website informs potential customers that "Chimney Cricket, Inc. was founded in 1990" and that "[w]hat began as just a few chimney sweeps working out of one location has now become a multi-state operation with a wide variety of masonry work, fireplace and chimney services."[33]

In 2018, Chimney Cricket's first year of business, it did nearly $3 million in gross revenue—nearly $1 million more than Chimnee Cricket in its final full year of

---

[28] *Id.* at p. 106, l. 22 – p. 107, l. 17.

[29] *Id.* at p. 50, ll. 2 – 18.

[30] *Id.*

[31] *Id.*

[32] IRS Ex. 11, Doc. No. 163-11, at 2.

[33] *Id.* at 5.

doing business.[34] Before long, however, Chimney Cricket, like Chimnee Cricket, ran into problems with the IRS.

In 2019, while attempting to collect back taxes from Chimnee Cricket, the IRS identified Chimney Cricket as a potential successor to Chimnee Cricket.[35] The IRS discovered that Chimnee Cricket and Chimney Cricket were both owned by Cerrito; both companies performed chimney and masonry-related work; both companies (at least for a period of time) worked out of the same office on Ashton Road; both companies shared some common employees; and Chimnee Cricket transferred some assets (presumably computers and equipment) to Chimney Cricket.[36]

Brian Palmer, Chimnee Cricket's Power of Attorney, had also told an IRS Revenue Officer that Chimney Cricket was formed to avoid Chimnee Cricket's creditors (other than the IRS) and that Chimney Cricket would be arranging to pay Chimnee Cricket's taxes.[37] When the Revenue Officer advised Palmer that the IRS would have to file a lien against Chimney Cricket as a successor entity, Palmer said he understood and did not object.[38]

---

[34] IRS Ex. 5, Doc. No. 163-5; IRS Ex. 7, Doc. No. 163-7, at 46.

[35] Debtor Ex. 24, Doc. No. 175-24, at 4. The reference to page number for Chimney Cricket's Exhibit 24 is to the page number at the bottom of the exhibit.

[36] Trial Tr., Doc. No. 190, p. 26, l. 14 – p. 29, l. 1.

[37] *Id.* at p. 15, l. 13 – p. 16, l. 11. A "Power of Attorney" is someone who steps into the taxpayer's shoes and is authorized to act on the taxpayer's behalf. *Id.* at p. 15, ll. 19 – 24.

[38] Debtor Ex. 24, Doc. No. 175-24, at 14.

Roughly a month later, however, Chimnee Cricket filed for chapter 7 bankruptcy.[39] The IRS notified Mary King, a second Power of Attorney for Chimnee Cricket, that the bankruptcy filing would not prevent the IRS from pursuing Chimney Cricket as a successor.[40] King later faxed the IRS with a list of reasons why, according to Cerrito, Chimney Cricket was not Chimnee Cricket's successor: Chimney Cricket used a new logo; performed services other than chimney cleaning and repair; did not use any Chimnee Cricket trucks; used only a "few" Chimnee Cricket employees; and obtained new credit.[41]

Suffice it to say the IRS was not persuaded by Cerrito's explanation. In fact, after receiving King's fax, the IRS believed it had discovered additional information that strengthened its successor liability case.[42] So the IRS persisted in pursuing a lien against Chimney Cricket. To avoid a tax lien, Chimney Cricket filed for chapter 11 bankruptcy.[43]

In this bankruptcy case, the IRS filed a $1.5 million proof of claim.[44] Chimney Cricket objected to the proof of claim because it sought to recover from Chimney

---

[39] IRS Ex. 7, Doc. No. 163-7.

[40] Debtor Ex. 24, Doc. No. 175-24, at 23.

[41] IRS Ex. 18, Doc. No. 163-18, at 2 – 3; Trial Tr., Doc. No. 190, at p. 20, l. 14 – 23, l. 25.

[42] Debtor Ex. 24, Doc. No. 175-24, at 30 – 31.

[43] *Id.* at 32; Debtor Ex. 29, Doc. No. 175-29.

[44] Debtor Ex. 20, Doc. No. 175-20. The precise amount of the IRS's proof of claim is $1,583,076.60.

Cricket taxes assessed against Chimnee Cricket.[45] So the Court must now decide whether Chimney Cricket is liable for Chimnee Cricket's tax debt as a successor corporation.

## II.    Conclusions of Law

Imposing liability on successor corporations is rooted in the notion that corporations should not be allowed to "avoid liability through corporate transformations in form only."[46] Thus, a successor corporation is liable for the debts of a predecessor corporation if: "(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor."[47]

### A.    Once the IRS proves a "nexus" between Chimnee Cricket and Chimney Cricket, Chimney Cricket bears the ultimate burden of proving it is not the "mere continuation" of Chimnee Cricket.

The IRS alleges that Chimney Cricket is a "mere continuation" of Chimnee Cricket.[48] Because the IRS is the claimant, it would ordinarily bear the ultimate

---

[45] Doc. No. 57.

[46] *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994); *Lab. Corp. of Am. v. Prof'l Recovery Network*, 813 So. 2d 266, 269 (Fla. 5th DCA 2002) (citing *Amjad Munim*).

[47] *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982).

[48] In the alternative, the IRS claims there was a "de facto merger" between Chimnee Cricket and Chimney Cricket. The Court does not need to address the IRS's "de facto merger" claim because it finds that the IRS prevails on its "mere continuation" claim.

burden of proving that Chimney Cricket is a "mere continuation" of Chimnee

Cricket: when a debtor objects to a proof of claim, as Chimney Cricket has done

here, the claimant ordinarily bears the burden of proving the validity and amount of

its claim.[49] A creditor generally bears the burden of proof on its proof of claim in

bankruptcy because it generally bears the burden of proof outside bankruptcy.[50]

But here, the IRS argues, Chimney Cricket would bear the burden of proof

outside bankruptcy. Because Chimney Cricket has objected to the IRS's claim on the

grounds that it is an impermissible attempt to collect taxes owed by Chimnee

Cricket, the IRS argues Chimney Cricket's claim objection is akin to a wrongful levy

action. And in wrongful levy actions, the party opposing the levy bears the burden of

proof.[51] Bankruptcy Judge Terrence Michael confronted this very issue in *In re*

*RahnDee Industrial Services, Inc.*[52]

---

[49] 11 U.S.C. § 502; *In re Jeffrey L. Miller Invs., Inc.*, 610 B.R. 692, 702 (Bankr. M.D. Fla. 2019) ("A proof of claim is prima facie evidence of the validity and amount of the claim. Unless objected to, a proof of claim is deemed allowed. Once an objection is filed, however, the burden shifts to the objecting party to present evidence rebutting the validity and amount of the claim. If, as is the case here, the objecting party rebuts the prima facie validity of a claim, the claimant bears the burden of proving its claim by a preponderance of the evidence.") (citations omitted).

[50] *Rahndee Indus. Servs. v. IRS (In re Rahndee Indus. Servs., Inc.)*, 2015 WL 6160288, at *9 (Bankr. N.D. Okla. Sept. 18, 2015) (agreeing with debtor that creditor generally bears the burden of proof "because *in the general case*, a creditor outside of bankruptcy would have the burden to persuade the court that a debtor was liable on a particular claim").

[51] *Today's Child Learning Ctr., Inc. v. United States*, 40 F. Supp. 2d 268, 272 n.2 (E.D. Penn. 1998) (noting that "the burden of proof in a wrongful levy action is on the plaintiff").

[52] 2015 WL 6160288, at *9 – 10.

There, the IRS sought to collect taxes owed by Beryllium Enterprises and Finished Castings from RahnDee Industrial Services, which the IRS alleged was the successor to Beryllium and Finished Castings. As part of its collection efforts, the IRS filed a tax lien against RahnDee and levied RahnDee's bank accounts (as well as amounts owed from its customers).[53] When RahnDee filed for bankruptcy, the IRS filed a proof of claim, alleging RahnDee was the successor in interest to Beryllium and Finished Castings.[54] RahnDee filed an adversary proceeding objecting to the IRS's claim and challenging the levies against RahnDee and its customers.[55]

The parties ultimately disagreed on who bore the ultimate burden of proof. Like Chimney Cricket here, RahnDee argued the general rule (i.e., when a debtor objects to a proof of claim, the claimant bears the ultimate burden of proof) applied in that proceeding. The IRS, however, argued that the proceeding was, at its heart, an action for wrongful lien that, but for the bankruptcy filing, would have been litigated outside bankruptcy, in which case RahnDee would have borne the burden of proof. With respect to the ultimate burden of proof, Judge Michael agreed with the IRS.

Judge Michael began by noting the fallacy in RahnDee's argument: the general burden-of-proof rule did not apply to the IRS's claim because a "claim by the

---

[53] *Id.* at *7.

[54] *Id.* at *8.

[55] *Id.*

IRS does not represent the general case."[56] Looking to the Supreme Court's decision two decades ago in *Raleigh v. Illinois Department of Revenue*, Judge Michael noted that the burden of proof is an essential element of an IRS claim[57]—i.e., the IRS is entitled to the burden of proof that normally comes with its claim.[58] And, as the *Raleigh* Court noted, the burden of proof in taxpayer cases is often placed on the taxpayer.[59] According to Judge Michael, "[t]he litigation of [the IRS's] claim in a bankruptcy forum does not change that result."[60] Thus, Judge Michael concluded that RahnDee bore the ultimate burden of proof in bankruptcy, just as it did outside bankruptcy.

But that did not mean the IRS had no burden at all. Judge Michael noted there was also a fallacy in the IRS's argument: the IRS assumed that because RahnDee bore the ultimate burden of proof, it bore all the burdens along the way. Not so.[61] The IRS, Judge Michael concluded, bore the burden of proving, by substantial evidence, a nexus between Beryllium and Finished Castings, on the one

---

[56] *Id.* at *9.

[57] *Id.* (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 – 21 (2000)).

[58] *Raleigh*, 530 U.S. at 21 ("That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it.").

[59] *Id.* The *Raleigh* Court noted "several compelling rationales" for placing the burden on taxpayers: the government has a "vital interest" in "acquiring its lifeblood, revenue"; the taxpayer has readier access to relevant information; and placing the burden on the taxpayer promotes voluntary compliance by giving taxpayers an incentive to self-report and to keep adequate records in case of a dispute. *Id.*

[60] *In re Rahndee Indus. Servs.*, 2015 WL 6160288, at *9.

[61] *Id.* at *10.

hand, and RahnDee, on the other.[62] This Court agrees with Judge Michael's well-reasoned decision in *RahnDee*.

Following *RahnDee*, the Court concludes the IRS bears the initial burden of coming forward with substantial evidence showing a nexus between Chimnee Cricket and Chimney Cricket. Once the IRS has met that burden, then the ultimate burden of proof shifts to Chimney Cricket. While the IRS has met its initial burden of proving a nexus, Chimney Cricket has failed to meet its burden of proving that it is not a "mere continuation" of Chimnee Cricket.

### B. The IRS proved a nexus between Chimnee Cricket and Chimney Cricket.

A successor entity is the mere continuation of its predecessor when the successor is merely a "new hat" for the predecessor with the same or similar ownership.[63] In other words, "[t]he change is in form, but not in substance."[64] Courts universally agree that the "key element of a continuation is a common identity of the officers, directors and stockholders."[65]

---

[62] *Id.*

[63] *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) ("The mere continuation exception applies when the purchasing corporation is merely a continuation or reincarnation of the selling corporation. In other words, the purchasing corporation is merely a 'new hat' for the seller, with the same or similar management and ownership.") (citation omitted); *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994).

[64] *Amjad Munim*, 648 So. 2d at 154.

[65] *See, e.g., Amjad Munim*, 648 So. 2d at 154; *Bud Antle*, 758 F.2d at 1458 – 59 (explaining that the "key element of a 'continuation' is a common identity of the officers, directors and stockholders"); *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008) (same).

The IRS has put on substantial evidence establishing this key element: Cerrito is the 100% owner of both Chimnee Cricket and Chimney Cricket.[66] And Cerrito was the president of both Chimnee Cricket and Chimney Cricket.[67] Evidence that Chimnee Cricket and Chimney Cricket have the same shareholder and the same president, alone, proves a nexus between the two entities.

While the test is whether there is a continuity of the corporate entity (as evidenced by common shareholders, officers, and directors), rather than continuity of the predecessor's business operations, the IRS did put on substantial evidence of continuity of business operations, too. For instance, the IRS put on evidence that Cerrito was the operational manager for both Chimnee Cricket and Chimney Cricket.[68] And the IRS put on evidence that Chimney Cricket relied on David Hildebrand and Anthony Zanni (both former Chimnee Cricket employees) to supervise other employees and to do estimating.[69] What's more, the IRS put on evidence that Chimnee Cricket and Chimney Cricket used similar trade names and logos, both provided chimney cleaning services, and both used the same lead

---

[66] Trial Tr., Doc. No .190, p. 43, ll. 13 – 15; p. 45, ll. 12 – 13.

[67] *Id.* at p. 42, ll. 8 – 15; Debtor Ex. 39, Doc. No. 175-39; IRS Ex. 2, Doc. No. 163-2. Chimney Cricket also has another officer: Nicole Jennifer Cerrito (Corporate Secretary). IRS Ex. 2, Doc. No. 163-2. Although the testimony is not clear, the Court presumes Nicole Cerrito is Jon's wife.

[68] Trial Tr., Doc. No. 190, p. 106, ll. 15 – 21.

[69] *Id.* at p. 106, l. 22 – p. 107, l. 17; IRS Ex. 18, Doc. No. 163-18.

generators to obtain customers (Home Advisor, Angie's List, and chimneycricket.com).

There's no question this evidence establishes a nexus between Chimnee Cricket and Chimney Cricket. Indeed, if this evidence doesn't demonstrate a nexus, it's hard to imagine what evidence would. Because the IRS has met its initial burden, the ultimate burden of proof shifts to Chimney Cricket to prove it is not a mere continuation of Chimnee Cricket.

**C.    Chimney Cricket failed to prove it is not the "mere continuation" of Chimnee Cricket.**

Chimney Cricket argues it is not the "mere continuation" of Chimnee Cricket for three reasons: First, Chimney Cricket argues there is no evidence Chimnee Cricket transferred "substantially all" its assets to Chimney Cricket. Second, Chimney Cricket claims the two entities "do not have many things in common": they used different trade names; they had different logos; and Chimney Cricket did work that Chimnee Cricket could not do. Third, Chimney Cricket argues it cannot be the "mere continuation" of Chimnee Cricket because Chimnee Cricket filed for chapter 7 bankruptcy.

**1.    Chimnee Cricket "transferred assets" to Chimney Cricket.**

As a threshold matter, Chimney Cricket argues it cannot be a "mere continuation" of Chimnee Cricket because there was no evidence Chimnee Cricket transferred substantially all its assets to Chimney Cricket. Without a transfer of

"substantially all" of Chimnee Cricket's assets, Chimney Cricket argues, there can be no successor liability. The Court disagrees.

To begin, the case Chimney Cricket relies on for the proposition that there can be no successor liability unless the predecessor corporation transfers substantially all its assets to the successor corporation—*Laboratory Corp. of America v. Professional Recovery Network*[70]—says nothing of the sort.

In that case, Florida's Fifth District Court of Appeal reversed entry of summary judgment in favor of Professional Recovery Network on Laboratory Corporation of America's successor liability claims (including a mere continuation claim).[71] While there was evidence in the record that the predecessor transferred its customers, receivables, accounting system, and database to Professional Recovery Network,[72] the Fifth District Court of Appeal never mentioned the transfer of assets in its discussion of Laboratory Corporation's mere continuation claim—let alone held that a "mere continuation" claim requires a transfer of *substantially* all the predecessor's assets.[73]

---

[70] 813 So. 2d 266 (Fla. 5th DCA 2002).

[71] *Id.* at 270.

[72] *Id.* at 271.

[73] *Id.* at 270.

Now, it's true that other courts appear to have suggested that a "transfer of assets" is necessary.[74] More than thirty-five years ago, in *Bud Antle, Inc. v. Eastern Foods, Inc.*, for instance, the Eleventh Circuit stated that "[a]ll four [grounds for successor liability] require a transfer of assets in order to hold the acquiring corporation liable."[75] Eleven years later, though, the Eleventh Circuit held, in *Sculptchair, Inc. v. Century Arts, Ltd.*, that a successor entity was a "mere continuation" of a predecessor for personal jurisdiction purposes—even though the successor denied assuming the predecessor's assets—because there was "an unmistakable identity of officers, directors, and location."[76] Thus, there appears to be some confusion whether a transfer of assets is necessary for a "mere continuation" claim.

But, assuming a "transfer of assets" is necessary, the Fifth Circuit Court of Appeals pointed out in *Patin v. Thoroughbred Power Boats, Inc.*, that "transfer of assets" does not necessarily mean "sale of assets."[77] And it noted "the fact that the entirety of the predecessor's assets were not transferred to the successor does not render the mere continuation exception inapplicable."[78]

---

[74] *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1457 (11th Cir. 1985)

[75] *Id.* This statement is dicta. The issue on appeal was whether the district court erred in refusing to enter a directed verdict in favor Eastern Foods on Bud Antle's "de facto merger" claim. *Id.* at 1453, 1456. Although the Eleventh Circuit discussed the "mere continuation" doctrine and ruled there was no "mere continuation" claim as a matter of law, it never discussed a transfer of assets in the context of the mere continuation claim. *Id.* at 1459.

[76] 94 F.3d 623, 630 (11th Cir. 1996).

[77] 294 F.3d 640, 651 (5th Cir. 2002) (applying Florida law).

[78] *Id.*

In *Patin*, the district court found that Steven Stepp, who owned Thoroughbred Power Boats (the predecessor) and Velocity Power Boats (the successor), "leased" the same equipment and many of the same employees to both Thoroughbred and Velocity; and Velocity built boats under the same trade name that Thoroughbred used.[79] Although Velocity used the same assets that Thoroughbred did, no direct sale of those assets ever took place.[80] Even so, the Fifth Circuit upheld the district court's finding that Velocity was a mere continuation of Thoroughbred.[81]

This case is like *Patin*. Here, like in *Patin*, there is no evidence that the predecessor (Chimnee Cricket) sold its assets to its successor (Chimney Cricket). But there is evidence that assets were "transferred" from Chimnee Cricket to Chimney Cricket: an IRS Revenue Officer testified that Chimnee Cricket's Power of Attorney told the Revenue Officer that assets were transferred to Chimney Cricket.[82] More important, there was evidence that Chimnee Cricket and Chimney Cricket both used the same key employees; for some period of time, both companies operated out of the same location; both companies used a similar trade name and logo; and both companies used chimneycricket.com to generate leads. The Court concludes that, to the extent a transfer of assets is necessary for a successor to be the "mere

---

[79] *Id.* at 650 – 51. The district court also found that Stepp and his wife were both the only shareholders and officers of Thoroughbred and Velocity. *Id.*

[80] *Id.* at 651.

[81] *Id.* at 652.

[82] Trial Tr., Doc. No. 90, p. 28, ll. 6 – 12.

continuation" of its predecessor, Chimnee Cricket's and Chimney Cricket's use of many of the same key assets constitutes a "transfer of assets."

**2.    Although there are differences between Chimnee Cricket and Chimney Cricket, the evidence shows there has been a relay-style passing of the baton from one to the other.**

Chimney Cricket argues that while it may have the same shareholder and president as Chimnee Cricket, it says the two companies have different—albeit similar—trade names and logos; on the whole, the employees are not the same; and the lines of business the companies are in are different. In light of these facts, Chimney Cricket argues "[t]he two entities do not have many things in common other than operating under similar names that are actually held by separate entities."

As a factual matter, the Court disagrees the two entities don't have much in common. Other than a minor spelling difference, the trade names are identical. The logos—which both feature six-legged crickets wearing sleeveless coats, vests, and top hats and holding brooms, brushes, and buckets—are virtually identical. The only meaningful difference in the logos is that Chimney Cricket's logo has text. Both companies used the same key employees: Cerrito, Hildebrand, and Zanni. While Chimney Cricket may have provided services that Chimnee Cricket couldn't, both companies provided chimney cleaning services. And both companies relied on the same sources for generating customer leads, including chimneycricket.com.

As a legal matter, the differences Chimney Cricket points out are not determinative. The test for whether a successor corporation is the "mere continuation" of a predecessor corporation has never been whether there are trivial

differences between the two entities. To the contrary, while the existence of common attributes does not automatically give rise to successor liability, "merely repainting the sign on the door and using new letterhead certainly gives the appearance that the new corporation is simply a continuation of the predecessor corporation."[83] The true test for determining whether a successor is the "mere continuation" of its predecessor is "whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other."[84]

Here, there is no question there has been a relay-style passing of the baton from Chimnee Cricket to Chimney Cricket. From 2006 to 2017, Chimnee Cricket provided chimney cleaning services, primarily to customers obtained through lead generators such as Home Advisor and Angie's List, and through the website chimneycricket.com. After doing more than $2 million in gross revenue in 2017, Chimnee Cricket basically stopped doing business in 2018—right around the time the IRS was assessing more than $750,000 in back taxes against the company. In 2018, as Chimnee Cricket was winding down, Cerrito started doing business as "Chimney Cricket." Using key Chimnee Cricket employees and the same sources for customer leads (Home Advisor, Angie's List, and chimneycricket.com), Chimney Cricket did nearly $3 million in gross revenue in 2018.

---

[83] *Lab. Corp. of Am. v. Prof'l Recovery Network*, 813 So. 2d 266, 270 (Fla. 5th DCA 2002).

[84] *Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 742 n.1 (Fla. 5th DCA 1988); *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994) (quoting *Orlando Light Bulb Serv., Inc.*, 523 So. 2d at 742 n.1).

The facts of this case are similar to those in *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, where the Eleventh Circuit upheld a finding of "mere continuation."[85] There, Centimark Corp., a roofing contractor, contracted with A to Z Georgia to provide roof coating on jobs for Centimark. A to Z Georgia breached the parties' contract. Centimark sued and obtained a judgment against A to Z Georgia, as well as A to Z Florida, which Centimark alleged was a "mere continuation" of A to Z Georgia. A to Z Florida appealed the finding that it was a "mere continuation" of A to Z Georgia.[86]

On appeal, the Eleventh Circuit, after noting that the test was "whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other," upheld the district court's "mere continuation" finding.[87] In doing so, the court noted that the evidence at trial established that both companies were "family businesses": Teresita Robb and her husband, Gerald Sr., owned both companies, though Gerald Sr. transferred his 49% interest in A to Z Georgia to his son, Gerald Jr.; and Teresita and Gerald Sr. were officers and directors of both companies (Gerald Jr. was an officer and director of A to Z Georgia).[88]

---

[85] 288 F. App'x 610, 615 – 16 (11th Cir. 2008).

[86] *Id.* at 614.

[87] *Id.* at 614 – 616.

[88] *Id.* at 614 – 15.

The evidence also established that both companies performed the same type of work; A to Z Georgia purchase orders were sometimes issued in A to Z Florida's name; the day-to-day operations did not change after A to Z Georgia stopped doing business in December 2004 and A to Z Florida started doing business in March 2005; and the Robb family owned most of the assets and leased them to the companies.[89]

So too here. Both companies here were owned by Cerrito. Cerrito was an officer of both companies (Chimney Cricket had an additional officer). Cerrito (either individually or through entities he owned) owned the trade names, logos, and websites used by the companies. Both companies did the same type of work. And Chimney Cricket started doing business around the time Chimnee Cricket started winding down, with revenue increasing by nearly $1 million from Chimnee Cricket's last year in business to Chimney Cricket's first year in business. Based on those facts, there is no question Chimney Cricket did not run its own race: there was unquestionably a relay-style passing of the baton from Chimnee Cricket to Chimney Cricket.

### 3. Chimnee Cricket's bankruptcy filing did not prevent a passing of the baton.

According to Chimney Cricket, there can be no relay-style passing of the baton because Chimnee Cricket filed for chapter 7 bankruptcy. An entity liquidated in chapter 7, Chimney Cricket argues, is unable to pass a baton. While that may be

---

[89] *Id.* at 615.

so, Chimnee Cricket (the chapter 7 debtor here) passed its baton before it filed for chapter 7 bankruptcy.

Chimnee Cricket began winding down its operations in 2018 and did not file for chapter 7 bankruptcy until the end of 2019. Chimney Cricket, however, was incorporated at the end of 2017 and began doing business in 2018. So Chimnee Cricket did not file for chapter 7 until nearly two years after passing its baton to Chimney Cricket. By that point, Chimney Cricket had done more than $5 million in business using a similar trade name and logo as Chimnee Cricket and using Chimnee Cricket's key employees and sources for customer leads. Chimney Cricket had taken the baton and was heading around the first corner on its leg of the relay before Chimnee Cricket filed for chapter 7 bankruptcy.

To its credit, Chimney Cricket acknowledges this flaw in its argument. Despite the timing, which Chimney Cricket concedes is "imperfect," Chimney Cricket contends "the effect is nonetheless the same." How so? Chimney Cricket never says. And it cites no authority in support of its position that a chapter 7 case filed after the baton has been passed somehow defeats a "mere continuation" claim. The Court therefore declines to insulate Chimney Cricket from liability based on a novel theory unsupported by case law.

## III.   Conclusion

At least when Cleo McDowell claimed in *Coming to America* that McDonald's and McDowell's were different, he could point to the fact that the companies had different officers, directors, and shareholders. Here, Jon Cerrito can make no such

claim: Cerrito was the sole shareholder and president of both Chimnee Cricket and Chimney Cricket.

And, whereas McDowell may have believed the trivial differences between McDonald's and the fictional McDowell's were enough to defeat a trademark claim, the trivial differences between Chimnee Cricket and Chimney Cricket that Cerrito raises actually give the appearance that Chimney Cricket is simply a continuation of Chimnee Cricket.

Ultimately, it was up to Chimney Cricket to disprove that it was a mere continuation of Chimnee Cricket. It failed to do so. The evidence at trial was unmistakable that there was a relay-style passing of the baton from Chimnee Cricket to Chimney Cricket. Because there was a relay-style passing of the baton, Chimney Cricket is liable for the tax debts of Chimnee Cricket. By separate order, the Court will overrule Chimney Cricket's objection to the IRS's proof of claim.

---

Attorney Gregory L. Jones is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who do not receive service by CM/ECF and to file a proof of service within 3 days of its entry.

---

**Gregory L. Jones, Esq.**
**Trial Attorney, Tax Division**
**U.S. Department of Justice**
  *Counsel for the Internal Revenue Service*

**Richard J. Cole, III, Esq.**
**Cole & Cole Law, P.A.**
  *Counsel for the Debtor*